# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAUNA SHOOP, et al., | CASE NO. CV F 10-1049 LJO DLB |
| Plaintiffs, | **ORDER ON DEFENDANT DEUTSCHE BANK'S F.R.Civ.P. 12 MOTION TO DISMISS** |
| vs. | (Doc. 9.) |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, | |
| Defendant. / | |

## INTRODUCTION

Defendant Deutsche Bank National Trust Company ("Deutsche Bank") seeks to dismiss as meritless and time barred pro se plaintiffs Shauna Shoop ("Ms. Shoop") and James Shoop's ("Mr. Shoop's") claims arising from attempts to foreclose on their Angels Camp, California property ("property"). This Court considered Deutsche Bank's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the July 30, 2010 hearing, pursuant to this Court's sua sponte dismissal of this action.

## BACKGROUND

### Ms. Shoop's Property Loan

In October 2005, Ms. Shoop borrowed $750,00 from originating lender American Home

Mortgage Acceptance, Inc.[1] and secured the loan with a Deed of Trust ("DOT") encumbering the property.[2]

On October 14, 2005, Ms. Shoop's loan was assigned to Deutsche Bank pursuant to a recorded Assignment of Deed of Trust.

Ms. Shoop defaulted on the loan, and a Notice of Default and Election to Sell Under Deed of Trust, recorded February 10, 2010, indicates that she was $27,805.42 in arrears. Ms. Shoop failed to cure the default, and a Notice of Trustee's Sale, recorded on June 11, 2010, set a June 1, 2010 foreclosure sale.

### Mr. And Ms. Shoop's Claims

On May 28, 2010, prior to Deutsche Bank's removal to this Court, Mr. and Ms. Shoop filed in Calaveras County Superior Court their complaint ("complaint") to assert claims under the Truth In Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., and its implementing Regulation Z, 12 C.F.R. §§ 226, et seq. The complaint also attempts to assert state law claims, and the complaint's individual claims will be addressed below. The complaint seeks to recover punitive damages and for Mr. and Ms. Shoop's emotional distress as well as an injunction of a foreclosure sale.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Deutsche Bank characterizes the TILA claims as time barred and insufficient to allege TILA violations. Deutsche Bank describes the complaint's remaining claims as "flawed."

"A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981). Sua sponte dismissal may be made before process is served on defendants. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*,

---

[1] Deutsche Bank notes that Mr. Shoop "is not a real party in interest" in that the loan was taken in Ms. Shoop's name alone to warrant dismissal of Mr. Shoop's claims.

[2] The DOT was recorded on October 21, 2005 with the Calaveras County Clerk-Recorder, where all documents pertaining to Ms. Shoop's loan and default were recorded.

2

1  745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte
2  prior to service of process on defendants).

3  A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set
4  forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception
5  of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not
6  whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to
7  support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*
8  *Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where
9  there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a
10 cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*
11 *v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

12  In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light
13 most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine
14 whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*
15 *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as
16 true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."
17 *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court
18 "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel.*
19 *Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must  not "assume that the
20 [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways
21 that have not been alleged." *Associated General Contractors of California, Inc. v. California State*
22 *Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt
23 to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd.*
24 *v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

25  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual
26 allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more
27 than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."
28 *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

Moreover, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss.

*Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982).  A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682.  If the limitations defense does not appear on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003).  Nonetheless, a court may consider exhibits submitted with the complaint.  *Van Winkle*, 290 F.Supp.2d at 1162, n. 2.  In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).  Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[3]  A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).  Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).  A court properly may take judicial notice of matters of public record outside the pleadings'" and consider them for purposes of the motion to dismiss. *Mir v.*

---

[3] "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

*Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citation omitted).

With these standards in mind, this Court turns to Deutsche Bank's challenges to the complaint's claims.

### **TILA Claims**

The complaint's (first) "Declaratory Relief" claim seeks this Court's "declaration" that "Defendants have no right to foreclose on the Property because the transaction has been rescinded" and that "Defendants violated TILA." The complaint's (third) "Cancellation of Cloud on Title" claim alleges that the DOT "is invalid and void because it is false, unlawful and fraudulent."

#### *Rescission Limitations Period*

Deutsche Bank contends that an attempt to rescind Ms. Shoop's loan under TILA is time barred.

TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without penalty, a consumer loan that uses their principal dwelling as security. *Semar v. Platte Valley Federal Sav. & Loan Ass'n*, 791 F.2d 699, 701 (9th Cir. 1986);15 U.S.C. § 1635(a). TILA rescission may be extended up to three years if the lender fails to comply with TILA disclosure requirements. *Semar*, 791 F.2d at 701-702; 15 U.S.C. § 1635(f).

15 U.S.C. § 1635(f) addresses the outer most limit to seek rescission:

> An obligor's right of rescission **shall expire three years after the date of consummation of the transaction** or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . (Bold added.)

The U.S. Supreme Court has described as "manifest" Congress' intent to prohibit rescission after the three-year period has run:

> Section 1635(f), however, takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well. The subsection says nothing in terms of bringing an action but instead provides that the "right of rescission [under the Act] shall expire" at the end of the time period. It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous. There is no reason, then, even to resort to the canons of construction that we use to resolve doubtful cases, such as the rule that the creation of a right in the same statute that provides a limitation is some evidence that the right was meant to be limited, not just the remedy. *See Midstate Horticultural Co., supra,* at 360, 64 S.Ct., at 130; *Burnett, supra,* at 427, n. 2, 85 S.Ct., at 1054 n. 2; *Davis v. Mills*, 194 U.S. 451, 454, 24 S.Ct. 692, 693-694, 48 L.Ed. 1067 (1904).

6

*Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417, 419, 118 S.Ct. 1408 (1998).

The complaint alleges, and matters subject to judicial notice reflect, that Ms. Shoop's loan was consummated in October 2006 to render her TILA rescission remedy expired prior to Ms. Shoop's purported May 25, 2010 Notice of Right to Cancel and May 28, 2010 filing of Mr. and Ms. Shoop's complaint. TILA rescission is time barred.

### *Failure To Tender*

Deutsche Bank further challenges TILA rescission as barred in that Mr. and Ms. Shoop "have not demonstrated or alleged that they are able to tender the balance of the Note." Deutsche Bank characterizes rescission without tender as "an empty remedy, not capable of being granted."

The "voiding of a security interest may be judicially conditioned on debtor's tender of amount due under the loan." *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007).

15 U.S.C. § 1635(b) governs the return of money or property when a borrower has rescinded effectively:

> . . . Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

12 C.F.R. § 226.23(d) address rescission effects and provides:

> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
>
> (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, **the consumer shall tender the money or property to the creditor** or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender,

1     the consumer may keep it without further obligation.  (Bold added.)

2     Neither TILA nor its Regulation Z "'establishes that a borrower's mere assertion of the right of 3 rescission has the automatic effect of voiding the contract.'" *Yamamoto v. Bank of New York*, 329 F.3d 4 1167, 1172 (9th Cir. 2003) (quoting *Large v. Conseco Financing Servicing Corp.*, 292 F.3d 49, 54-55 5 (1st Cir. 2002)).  The Ninth Circuit Court of Appeals, relying on *Large*, explained:

6     Instead, the "natural reading" of the language of § 1635(b) "is that the security interest becomes void when the obligor exercises a right to rescind that is available in the
7     particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. . . . Until such
8     decision is made the [borrowers] have only advanced a claim seeking rescission."

9 *Yamamoto*, 329 F.3d at 1172 (quoting *Large*, 292 F.3d at 54-55)).

10     A rescission notice is not automatic "without regard to whether the law permits [borrower] to 11 rescind on the grounds asserted."  *See Yamamoto*, 329 F.3d at 1172.  Entertaining rescission 12 automatically "makes no sense . . . when the lender contests the ground upon which the borrower 13 rescinds." *Yamamoto*, 329 F.3d at 1172.  "In these circumstances, it cannot be that the security interest 14 vanishes immediately upon the giving of notice.  Otherwise, a borrower could get out from under a 15 secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed 16 any." *Yamamoto*, 329 F.3d at 1172 (italics in original).

17     Moreover, although 15 U.S.C. § 1635(b) "provides for immediate voiding of the security interest 18 and return of the money within twenty days of the notice of rescission, we believe this assumes that the 19 notice of rescission was proper in the first place." *In re Groat*, 369 B.R. 413, 419 (Bankr. 8th Cir. 2007). 20 A "court may impose conditions on rescission that assure that the borrower meets her obligations once 21 the creditor has performed its obligations." *Yamamoto*, 329 F.3d at 1173.  The Ninth Circuit has 22 explained that prior to ordering rescission based on a lender's alleged TILA violations, a court may 23 require borrowers to prove ability to repay loan proceeds:

24     As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures after
25     deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could
26     not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion,
27     taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the
28     evidence that the borrower lacks capacity to pay back what she has received (less interest,

8

finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

*Yamamoto*, 329 F.3d at 1173 (affirming summary judgment for lender in absence of evidence that borrowers could refinance or sell property); *see American Mortgage*, 486 F.3d at 821 ("Once the trial judge in this case determined that the [plaintiffs] were unable to tender the loan proceeds, the remedy of unconditional rescission was inappropriate."); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir. 1974) (under the facts, loan rescission should be conditioned on the borrower's tender of advanced funds given the lender's non-egregious TILA violations and equities heavily favoring the lender).[4]

Neither the complaint nor record references Mr. and Ms. Shoop's viable notice to rescind or tender of remaining indebtedness. Deutsche Bank correctly contests Mr. and Ms. Shoop's attempt to rescind. The complaint does not address conditions precedent to permit rescission. The complaint is not a timely, valid rescission notice. The complaint's silence on Mr. and Ms. Shoop's tender of or ability to tender loan proceeds is construed as their concession of inability to do so. "Clearly it was not the intent of Congress to reduce the mortgage company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest." *American Mortgage*, 486 F.3d at 820-821. Without Mr. and Mrs. Shoop's meaningful tender, TILA rescission is an empty remedy, not capable of being granted. The absence of a sufficiently alleged notice of rescission and tender of loan proceeds dooms a TILA rescission claim to warrant its dismissal.

### *Damages Limitations Period*

Deutsche Bank points out that to the extent the complaint seeks TILA damages, a claim for such relief is also time barred.

A TILA damages claim is subject to 15 U.S.C. § 1640(e), which provides that an action for a

---

[4] The Fourth Circuit Court of Appeals agrees with the Ninth Circuit that 15 U.S.C. § 1635(b) does not compel a creditor to remove a mortgage lien in the absence of the debtor's tender of loan proceeds:

> Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers.

*Powers v. Sims & Levin*, 542 F.2d 1216, 1221 (4th Cir. 1976).

1  TILA violation must proceed "within one year from the date of the occurrence of the violation." "TILA
2  requires that any claim based on an alleged failure to make material disclosures be brought within one
3  year from the date of the occurrence of the violation." *Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d
4  1176, 1183 (D. Or. 2005).  The limitations period runs from the date of a transaction's consummation
5  which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v.*
6  *Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008).  The Ninth
7  Circuit noted in *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003):

> The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed.  The [plaintiffs] were in full possession of all information relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day the loan papers were signed.

Ms. Shoop consummated her loan in October 2006 and filed her complaint on May 28, 2010, more than three years after her loan transaction, to render a TILA damages claim time barred.

### *TILA Compliance*

Deutsche Bank points out that documents which "form the basis" of Mr. and Mrs. Shoop's claims "contain the necessary expiration date, and are in full compliance with TILA and Regulation Z." Deutsche Bank provides three TILA Notices of Right to Cancel, which Ms. Shoop signed and initialed and which set forth the transaction date and "How to Cancel," including the deadline to do so.  The Notices of Right to Cancel provide further grounds to dismiss Mr. and Ms. Shoop's claims.

The complaint lacks a viable TILA claim to warrant dismissal of the declaratory relief and cancellation of cloud on title claims.

### **Injunctive Relief**

The complaint's (second) injunctive relief claim alleges that the "scheduled sale is wrongful and should be enjoined.

Deutsche Bank notes the unavailability of injunctive relief in the absence of a viable claim to support it.

"Equity will not interpose its remedial power in the accomplishment of what seemingly would be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there has been no proof as to what beneficial purpose may be subserved through its intervention." *Karlsen*,

*v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). "Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." *Shell Oil Co. v. Richter*, 52 Cal.App.2d 164, 168, 125 P.2d 930 (1942).

Neither a viable claim nor "an independent duty" supports injunctive relief to doom the injunctive relief claim. In other words, the injunctive relief claim fails with the complaint's other claims.

## Emotional Distress

The complaint's (fourth) intentional infliction of emotional distress claim alleges that "Defendants' conduct was intentional and malicious and done for the purpose of causing Plaintiffs to suffer mental anguish and emotional distress." The complaint's (fifth) negligent infliction of emotional distress claim alleges that "Defendants knew, or should have known, that their acts alleged above would cause Plaintiffs to suffer severe emotional distress."

### *No Tort Remedy*

Deutsche Bank argues that the parties' relationship is "fundamentally contractual" to bar tort claims, including intentional and negligent infliction of emotional distress.

In *Hunter v. Up-Right, Inc.*, 6 Cal.4th 1174, 1180, 26 Cal.Rptr.2d 8 (1993), the California Supreme Court distinguished contract and tort theories:

> We noted that "[t]he distinction between tort and contract is well grounded in common law, and divergent objectives underlie the remedies created in the two areas. Whereas contract actions are created to enforce the intentions of the parties to the agreement, tort law is primarily designed to vindicate 'social policy.' [Citation.]" ( Foley, supra, 47 Cal.3d at p. 683.)

In *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 517, 28 Cal.Rptr.2d 475 (1994), the California Supreme Court agreed with the following summary of contract law:

> "[W]hen two parties make a contract, they agree upon the rules and regulations which will govern their relationship; the risks inherent in the agreement and the likelihood of its breach. The parties to the contract in essence create a mini-universe for themselves, in which each voluntarily chooses his contracting partner, each trusts the other's willingness to keep his word and honor his commitments, and in which they define their respective obligations, rewards and risks. Under such a scenario, it is appropriate to enforce only such obligations as each party voluntarily assumed, and to give him only such benefits as he expected to receive; this is the function of contract law."

Deutsche Bank correctly notes that the complaint "presents a case founded on contract" and that the parties have a limited "contractual relationship created when the Note and Deed of Trust" were

executed by Ms. Shoop. The contractual relationship bars the complaint's tort claims.

### *Intentional Infliction Of Emotional Distress Elements*

Deutsche Bank faults the intentional infliction of emotional distress claim's failure to satisfy the basic element of "outrageous conduct" and reliance on conclusory allegations without supporting facts.

The elements of a cause of action for intentional infliction of emotional distress are: (1) defendant's outrageous conduct; (2) defendant's intention to cause, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff's suffering severe or extreme emotional distress; and (4) an actual and proximate causal link between the tortious (outrageous) conduct and the emotional distress. *Nally v. Grace Community Church of the Valley*, 47 Cal.3d 278, 300, 253 Cal.Rptr. 97, 110 (1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644 (1989)*;Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155, n. 7, 233 Cal.Rptr. 308 (1987). The "[c]onduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminister*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252 (1982) (quoting *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593, 156 Cal.Rptr.198 (1979)). Conduct is extreme and outrageous when it is of a nature which is especially calculated to cause, and does cause, mental distress. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 617, 262 Cal.Rptr. 842, 857 (1989).

To support an intentional infliction of emotional distress claim, the conduct must be more than "intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen v. Superior Court*, 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79 (1991). The California Supreme Court has further explained:

> "The law limits claims of intentional infliction of emotional distress to egregious conduct toward plaintiff proximately caused by defendant." . . . The only exception to this rule is that recognized when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff. . . . Where reckless disregard of the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory. . . .

*Christensen*, 54 Cal.3d at 905-906, 2 Cal.Rptr.2d 79 (citations omitted.)

"'Where reasonable men may differ, it is for the jury, subject to the control of the court, to

determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.'" *Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 499, 86 Cal.Rptr. 88 (1970) (quoting Rest. 2d Torts, § 46, com. h).

"In the context of debt collection, courts have recognized that the attempted collection of a debt by its very nature often causes the debtor to suffer emotional distress." *Ross v. Creel Printing & Publishing Co.,* 100 Cal.App.4th 736, 745, 122 Cal.Rptr.2d 787 (2002) (citing *Bundren v. Superior Court,* 145 Cal.App.3d 784, 789, 193 Cal.Rptr. 671 (1983)). "Frequently, the creditor intentionally seeks to create concern and worry in the mind of the debtor in order to induce payment." *Bundren,* 145 Cal.App.3d at 789, 193 Cal.Rptr. 671. Such conduct is only outrageous if it goes beyond "all reasonable bounds of decency." *Bundren,* 145 Cal.App.3d at 789, 193 Cal.Rptr. 671.

"The assertion of an economic interest in good faith is privileged, even if it causes emotional distress." *Ross,* 100 Cal.App.4th at 745, n. 4, 122 Cal.Rptr.2d 787 (citing *Fletcher v. Western National Life Ins. Co.,* 10 Cal.App.3d 376, 395, 89 Cal.Rptr. 78 (1970)); *Cantu v. Resolution Trust Corp.,* 4 Cal.App.4th 857, 888, 6 Cal.Rptr.2d 151 (1992). "In debtor/creditor cases, the privilege is qualified, in that it can be vitiated where the creditor uses outrageous and unreasonable means in seeking payment." *Ross,* 100 Cal.App.4th 736, 745, n. 4, 122 Cal.Rptr.2d 787 (citing *Symonds v. Mercury Savings & Loan Assn.,* 225 Cal.App.3d 1458, 1469, 275 Cal.Rptr. 871 (1990)).

The complaint fails to allege Deutsche Bank's outrageous conduct to support intentional infliction of emotional distress. The complaint points to no conduct of Deutsche Bank outside that generally accepted in debt collection and/or the foreclosure process, which is inherently stressful for debtors. The intentional infliction of emotional distress claim fails on its merits to warrant its dismissal.

### *Negligent Infliction Of Emotional Distress – Absence Of Duty*

Deutsche Bank argues that the negligent infliction of emotional distress claim fails in the absence of its cognizable duty owed to Mr. and Mrs. Shoop.

Negligent infliction of emotional distress is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply. *Huggins v. Longs Drug Stores California, Inc.*, 6 Cal.4th 124, 129, 24 Cal.Rptr.2d 587 (1993). California law recognizes that "there is no independent tort of negligent infliction of emotional distress" in that "[t]he tort is negligence, a

cause of action in which a duty to the plaintiff is an essential element." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 984, 25 Cal.Rptr.2d 550 (1993). The existence of a duty is a question of law. *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.,* 48 Cal.3d 583, 588, 257 Cal.Rptr. 98 (1989).

Negligent infliction of emotional distress includes "at least two variants of the theory" – "bystander" cases and "direct victim" cases. *Wooden v. Raveling*, 61 Cal.App.4th 1035, 1037, 71 Cal.Rptr.2d 891, 892 (1998). "The distinction between the 'bystander' and the 'direct victim' cases is found in the source of the duty owed by the defendant to the plaintiff." *Burgess v. Superior Court*, 2 Cal.4th 1064, 1072, 9 Cal.Rptr.2d 615 (1992). "Bystander" claims are typically based on breach of a duty owed to the public in general (*Christensen v. Superior Court*, 54 Cal.3d 868, 884, 2 Cal.Rptr.2d 79 (1991)), whereas a right to recover for emotional distress as a "direct victim" arises from the breach of a duty that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of the defendant's preexisting relationship with the plaintiff (*Burgess*, 2 Cal.4th at 1073-1074, 9 Cal.Rptr. 615; *Marlene F.*, 48 Cal.3d at 590, 257 Cal.Rptr. 98). "[B]ystander liability is premised upon defendant's violation of a duty not to negligently cause emotional distress to people who observe conduct which causes harm to another." *Burgess*, 2 Cal.4th at 1073, 9 Cal.Rptr. 615.

"'Bystander' cases are cases in which the plaintiff was not physically impacted or injured, but instead witnessed someone else being injured due to defendant's negligence." *Wooden*, 61 Cal.App.4th at 1037, 71 Cal.Rptr.2d at 892. "'Direct victim' cases are cases in which the plaintiff's claim of emotional distress is not based upon witnessing an injury to someone else, but rather is based upon the violation of a duty owed directly to the plaintiff." *Wooden*, 61 Cal.App.4th at 1038, 71 Cal.Rptr.2d at 893-894. In "direct victim" cases, "well-settled principles of negligence are invoked to determine whether all elements of a cause of action, including duty, are present in a given case." *Burgess*, 2 Cal.4th at 1073, 9 Cal.Rptr.2d 615. "[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and emotional distress is proximately caused by that breach of duty." *Potter*, 6 Cal.4th at 985, 25 Cal.Rptr.2d 550.

Deutsche Bank is correct that the complaint fails to allege facts to support either the direct victim or bystander theory. The complaint fails to allege Deutsche Bank's duty to support a direct victim

theory. The complaint fails to allege facts of physical injury to Mr. and Mrs. Shoop or others to support a bystander theory. The negligent infliction of emotional distress claim fails.

### Deutsche Bank's Alternative Motions

Given dismissal of Mr. and Mrs. Shoop's claims, this Court need not address Deutsche Bank's alternative motions for a more definite statement and to strike.

### Attempt At Amendment And Malice

Mr. and Ms. Shoop's claims are insufficiently pled and barred as a matter of law. Mr. and Ms. Shoop are unable to cure their claims by allegation of other facts and thus are not granted an attempt to amend.

Moreover, this Court surmises that Mr. and Ms. Shoop have brought this action in absence of good faith and that Mr. and Ms. Shoop exploit the court system solely for delay or to vex defendants. The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process"). A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984). An attempt to vex or delay provides further grounds to dismiss this action against Deutsche Bank.

### CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES with prejudice this action against Deutsche Bank; and
2. DIRECTS the clerk to enter judgment in favor of Deutsche Bank National Trust Company and against plaintiffs Shauna Shoop and James Shoop.

IT IS SO ORDERED.

**Dated:   June 28, 2010**                  /s/ Lawrence J. O'Neill
                                                                 UNITED STATES DISTRICT JUDGE